# In the United States Court of Federal Claims

No. 19-1583C

(Filed:  August 25, 2020)

| | |
|---|---|
| **HOUSING AUTHORITY OF THE CITY OF SLIDELL,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | Duty of candor; judicial estoppel; *Boaz v. United States*; *Greenleaf Limited Partnership v. Illinois Housing Development Authority*; Tucker Act jurisdiction; Housing and Urban Development; annual contributions contract; breach of contract; money damages. |

## ORDER

**SOLOMSON, Judge.**

In the corporate world, a common theme is that members of a high-functioning team should assume that their colleagues each act with positive intentions.[1] In legal parlance, we call it the presumption of good faith.  In some sense, those who practice before the Court are on the same team; that is, despite our adversarial system of litigation, we are all participants in a process where the ultimate goals are to determine the truth and to arrive at a just outcome, consistent with the law.[2]  In that regard, the

---

[1] Jim Haudan, *How the Worst Leaders Destroy Trust in the Workplace*, Inc. (Apr. 21, 2016), https://www.inc.com/jim-haudan/this-one-leadership-habit-can-inspire-distrust-in-the-workplace.html; Erika Andersen, *The Best Teams Have These Five Things — Does Yours?*, Forbes (Jul. 13, 2015, 11:19 PM), https://www.forbes.com/sites/erikaandersen/2015/07/13/the-best-teams-have-these-five-things-does-yours/#46fac827d665; *Hanlon's Razor: Relax, Not Everything is Out to Get You*, Farnam Street, https://fs.blog/2017/04/mental-model-hanlons-razor/ (last visited Aug. 24, 2020).

[2] *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993) ("Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice.  However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition.  Even the slightest accommodation of deceit or a lack of candor in any material

undersigned is a firm believer in not imputing ill-will or improper motives to anyone, absent some concrete evidence warranting a contrary conclusion.  But our justice system only functions properly when litigants and their counsel adhere to the rules, including, but not limited to, the duty of candor, and to this Court's orders.

At least twice now in this case, the Department of Justice has made statements to this Court — regarding the government's various litigation positions and whether they may be at all reconciled — that had, at the very least, a misleading effect.  Indeed, the government's motion to dismiss and oral argument presentation forced the Court to spend countless hours trying to untangle a hodgepodge of arguments seemingly thrown against the wall, in order to determine the answer to the question of whether the Plaintiff, the Housing Authority of the City of Slidell ("HACS"), stated a claim for breach of contract within this Court's Tucker Act jurisdiction.[3]  When this Court subsequently provided the government with the opportunity to remedy its omissions, and thereby clarify its position, the government declined to do so, but, in effect, made a false representation of its position.  The government thus appears either to be just trying to notch wins[4] or to avoid saying anything that may jeopardize its appeal in *Boaz v. United States*, 19-2325 (Fed. Cir.), pending before our appellate court — the United States Court of Appeals for the Federal Circuit (*e.g.*, by having to inform *that* court that the government's position constitutes an about-face from what the government told the United States Court of Appeals for the Seventh Circuit).  The Court respects that the government's counsel no doubt have a different point-of-view, and that they are

---

respect quickly erodes the validity of the process."); *Hanover Ins. Co. v. United States*, 146 Fed. Cl. 447, 450 (2019) (discussing *Shaffer Equip. Co.* and noting "the truism that attorneys must not mislead the court").

[3] As detailed in the Court's decision denying the government's motion to dismiss, some of those hours were spent reviewing regulations upon which the Justice Department relied for particular, material legal assertions, only to have counsel of record abandon such assertions, or at least the government's reliance on those regulations, during oral argument.  ECF No. 31, Jun. 24, 2020 Tr. 34:18–25 ("THE COURT:  There's a lot of other citations here that I was prepared to walk through that are not in Section 2 -- that are not in Title 2 CFR.  [GOVERNMENT'S COUNSEL]:  Your Honor, I don't think they necessarily answer your specific questions.  They're not the specific . . . requirements or conditions that can be implicated.  So I don't know that they would answer this question.").

[4] "It is not the duty of the Justice Department simply to try to win cases for the Government; as President Lincoln famously said, 'It is as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals.'" *Byrum v. Office of Pers. Mgmt.*, 618 F.3d 1323, 1333 & n.6 (Fed. Cir. 2010) (quoting President Lincoln's First Annual Message to Congress (Dec. 3, 1861), and noting that "this quotation is engraved at the entrance to our courthouse").

reasonable people who are zealously representing their client, the United States. Nevertheless, the Court believes itself obligated not to just let this issue go.[5]

I.

A brief recounting of events in this case is warranted.

In preparation for oral argument on the government's motion to dismiss for lack of jurisdiction and for failure to state a claim, this Court ordered the parties to be prepared to address a number of issues, one of which was whether and how the government's position here could be reconciled with its position in a number of United States district court cases.  ECF No. 27 at 2.  In those district court cases, the government argued that claims based on the same type of Department of Housing and Urban Development ("HUD") contract at issue in this case — *i.e.*, an Annual Contributions Contract ("ACC") — belonged in this Court pursuant to the Tucker Act.  *See, e.g.*, *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2009 WL 449100, at *5–6 (N.D. Ill. Feb. 23, 2009) (concluding that "[plaintiff's] claims are in substance contract-based actions asking for monetary relief from HUD"); *Vill. W. Assocs. v. Rhode Island Hous. & Mortg. Fin. Corp.*, 618 F. Supp. 2d 134, 137 (D.R.I. 2009) ("[A]t bottom [plaintiff] seeks money damages . . . grounded upon rights that spring from the ACC contract.  Thus, the action falls within the Tucker Act, 28 U.S.C. § 1491, and the exclusive forum is the United States Court of Federal Claims[.]").[6]  In this case, in contrast, the government maintains that HACS's claims belong in a district court pursuant to the Administrative Procedure Act ("APA").  ECF No. 22 ("Def. Mot.") at 10 ("This is a lawsuit under the APA, which must be filed in district court[.]").[7]

---

[5] *United States Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 925 (4th Cir. 1995) ("[A] lawyer's duty  of candor to the court must always prevail in any conflict with the duty of zealous advocacy."); *Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *3 n.11 (W.D. Pa. June 15, 2009) ("Counsel are cautioned that zealous advocacy must be tempered by observance of the duty of candor toward a tribunal.").

[6] In an earlier decision, this Court cataloged a number of cases which reached the same conclusion(s) based on the government's arguments — *i.e.*, that ACC breach claims should be viewed as ordinary breach of contract actions which seek monetary damages, rather than equitable relief (and, thus, jurisdiction is proper in this Court pursuant to the Tucker Act). *Hous. Auth. of Slidell v. United States*, -- Fed. Cl. --, 2020 WL 4593229, at *25 n.52 (Fed. Cl. July 27, 2020).

[7] In contrast to the government's argument in its motion to dismiss, counsel for the government during oral argument was non-committal regarding whether breach of ACC claims properly may be brought in a district court pursuant to the APA.  Jun. 24, 2020 Tr. 94:15–23 ("[GOVERNMENT'S COUNSEL]:  Sitting here today, I'm not willing to bind my colleagues in whichever district of Louisiana. . . . I do think that that . . . this is the question of whether there

During oral argument, counsel of record for the United States informed this Court that the government's various positions were not inconsistent because the government previously had reversed its own view regarding this Court's jurisdiction over ACC breach claims.  *See* Jun. 24, 2020 Tr. 65:14–66:9.  Particularly, the government's counsel pointed to a confession of error that had been authorized by the Office of the Solicitor General ("OSG") and submitted to the United States Court of Appeals for the Seventh Circuit.  The government relied upon that confession of error in this case to establish the government's current position concerning ACC breach claims:  the district court properly *has* jurisdiction over ACC breach claims.  At least, that is how counsel for the government presented the confession of error brief.  Thus, counsel of record for the government in this case avoided questions regarding how and why the government at one point contended that jurisdiction was proper *only* in this Court pursuant to the Tucker Act, but then contended that jurisdiction over HACS's claims is proper, if anywhere, *only* in the district court.

Put yet differently still, the government's asserted solution to the apparent contradictory positions was that, ever since its confession of error before the Seventh Circuit, the government has maintained that the district court (and not the United States Court of Federal Claims) has jurisdiction over ACC breach claims.  *See* Jun. 24, 2020 Tr. 66:3–9 ("THE COURT:  So now, the consistent position of the United States Government is that ACC claims belong in District Court.  [GOVERNMENT'S COUNSEL]:  Yes, Your Honor. . . . That finding -- the confession of error is consistent with the position in this case, yes.").  The Court concluded that statement is false, *see Hous. Auth. of Slidell*, 2020 WL 4593229, at *24–25, and the Court still struggles to understand why the government did not provide a fulsome explanation at oral argument of the position it had taken before the Seventh Circuit and then declined the opportunity to explain itself in writing.  *See* ECF No. 35, Aug. 19, 2020 Tr. 14:3–15.

Thus, an obstacle this Court faced in resolving the government's motion to dismiss is that the government's counsel inaccurately explained the confession of error before the Seventh Circuit.  Far from asserting that the district court has *exclusive* jurisdiction over ACC breach claims, the government's confession of error in fact admitted only that HUD's "sue-and-be-sued" clause provided for *concurrent* jurisdiction with this Court's Tucker Act jurisdiction over what were indisputably government contract breach claims.  *See Hous. Auth. of Slidell*, 2020 WL 4593229, at *23.  Counsel for the government did not inform the Court during oral argument that, in its Seventh Circuit confession of error brief, the government continued to argue that:  (1) the district court lacked APA jurisdiction over ACC breach of contract claims (contrary to the

---

is APA jurisdiction over the Section 8 cases.  My expectation is [] that would be similar to the position that we would have here.").

government's position in this case); and (2) such contract claims could be brought in this Court pursuant to the Tucker Act. Brief For Federal Third-Party Defendant/Appellee, ECF No. 23 at 7, 9 n.3, *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2012 WL 1226060, at *7, *9 n.3 (7th Cir. Apr. 2, 2012) (No. 11-1753). Counsel for the government did not file the Seventh Circuit confession of error brief in advance of the oral argument, did not read any part of it to the Court during oral argument, and did not file any explanation of that brief following the oral argument.

Whether counsel for the government mischaracterized the confession of error — or otherwise omitted its details — for the express purpose of avoiding the Court's (possibly) difficult or uncomfortable questions, or whether the error was inadvertent, this Court could not say for certain (although we presumed good faith). After discovering the error, however, this Court expressed concerns — at some length — regarding the government's litigation strategy and its counsel's duty of candor. *See Hous. Auth. of Slidell*, 2020 WL 4593229, at *25 ("The government has not adequately explained its evolving views of Tucker Act jurisdiction; the government's position in this case is all but impossible to reconcile with the details of the confession of error brief filed in the Seventh Circuit. This is not the first time this Court (or the Federal Circuit, for that matter) has been critical of the government's ad-hoc approach to jurisdictional issues."); *id.* at n.54 (citing cases in support of the proposition that the purpose of judicial estoppel and the insistence that parties not adopt inconsistent positions is to prevent parties from "playing fast and loose with the courts" (quoting *Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir. 1953))).

Although this Court denied the government's motion to dismiss, the Court specifically provided the government with an opportunity to cure its "fail[ure] to mention . . . during oral argument [that] the government expressly argued to the Seventh Circuit that the district court's jurisdiction was not exclusive, but rather was concurrent with the Court of Federal Claims[.]" *Hous. Auth. of Slidell*, 2020 WL 4593229, at *23. Accordingly, this Court informed the government as follows:

> Particularly because the Court gave the government fair warning about the Court's interest in understanding the government's position in *Greenleaf* (and similar district court cases), *see* ECF No. 27 at 2, the Court rejects the government's fractional explanation provided during oral argument. *The Court nevertheless will provide the government yet another chance to explain itself. At some point, however, this Court (or the Federal Circuit) will have to do more than simply issue critiques or admonishments, particularly when plaintiffs are made the subject of actual or attempted "jurisdictional ping pong."*

*Id.* at \*25 (emphasis added) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. at 818–19 (1988)).  As explained in more detail below, the time for this Court "to do more" has arrived.

II.

As noted above, this Court provided the government with an opportunity to explain its deficient oral argument presentation regarding the confession of error filed in the Seventh Circuit, as well as the government's position concerning the district court decisions this Court identified *prior to oral argument*.  In particular, the Court ordered as follows:

> [I]f the Justice Department's Commercial Litigation Branch, *after consulting with the Office of the Solicitor General* ("OSG"), in fact no longer stands by the latter's view of the Tucker Act and the APA — in the context of an alleged breach of an ACC — as articulated in the confession of error brief submitted to the Seventh Circuit in *Greenleaf*, the government may file a supplemental brief on or before **August 10, 2020**, not to exceed five (5) pages.  In that brief, the government shall explain the reason for its revised view, as well as how its new position fits with the government's representations at oral argument.
>
> *Alternatively*, if the government believes that the *Greenleaf* ACC provisions and/or the claims at issue in that case are distinguishable — for *jurisdictional* purposes — from those at issue here, the government may file a supplemental brief on or before **August 10, 2020**, not to exceed five (5) pages, in which the government shall compare the various ACC provisions and claims.  Such supplemental brief shall include as attachments both the complaint against HUD in *Greenleaf*, as well as the operative ACC(s) in that case.

> The government may file ***only one*** of the supplemental briefs specified above. To be clear, given the government's reliance upon the above-discussed Seventh Circuit briefing, the government — with respect to *either* optional supplemental brief — shall consult with, and include a representation that it has cleared its position with, the OSG.

*Hous. Auth. of Slidell*, 2020 WL 4593229, at *32.

Critically, the Court warned the government that its failure to file either supplemental brief would constitute a specific and unequivocal representation to the Court:

> If the government elects not to file either supplemental brief, the Court will understand that to mean that the government's current view is consistent with its position taken before the Seventh Circuit, and that such position, having been accepted by this Court as well, required the denial of the government's motion to dismiss for lack of jurisdiction here.

*Id.* Accordingly, this is not a case where the government's silence could be misconstrued in any way. Rather, this Court made clear to the government that its election not to file a supplemental brief would be viewed as the government's having made a very precise representation to this Court, one that would significantly undermine not only the validity of the government's arguments in its motion to dismiss, but also the veracity of its representations during oral argument.[8]

---

[8] *See Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 960 n.10 (11th Cir. 2012) ("[C]ounsel, by its silence, implicitly agreed to entry of the stay."); *In re Marriage of Lionberger*, 97 Cal. App. 3d 56, 62 (Ct. App. 1979) ("The silence of counsel under the circumstances, on two occasions in open court, is tantamount to assent to the provision . . . and that assent is binding on appellant[.]"); *Decker v. Norfolk S. R. Co.*, 83 S.E. 27, 28 (N.C. 1914) (discussing the ancient principle of "qui tacet, consentire videtur" and explaining that "the silence of counsel implied their assent to the course adopted by the judge, and 'a man who does not speak when he ought shall not be heard when he desires to speak'" (citations omitted)); *Scott-Iverson v. Indep. Health Ass'n, Inc.*, 2016 WL 3444226, at *3 (W.D.N.Y. June 23, 2016) ("Plaintiff's agreement to the stipulation may be inferred from the Plaintiff's counsel's silence or failure to respond to [the] e-mail expressly sent to confirm such stipulation."); *BMO Harris Bank N.A. v. Stoebner*, 2015 WL 13858611, at *5 n.4 (D. Minn. Jan. 8, 2015) ("Within this context, the Bankruptcy Court properly took counsel's silence as assent that the sole issue for trial would be insolvency."); *Siegel v. Warner Bros. Entm't Inc.*, 2007 WL 9627501, at *6 (C.D. Cal. Oct. 23, 2007) ("The Court construes such silence as plaintiffs' counsel's acquiescence…"); *Hartford Elec. Supply Co. v. Allen-Bradley Co.*, 2000 WL 1918005, at *5 (Conn. Super. Ct. Dec. 18, 2000) ("Our law is clear that 'consent' or 'assent' may be inferred from the attendant circumstances and conduct of the parties. . . . The

Insofar as the Court understood that, if the government indeed stood by "its position taken before the Seventh Circuit, and that such position, having been accepted by this Court as well, required the denial of the government's motion to dismiss for lack of jurisdiction here[,]" 2020 WL 4593229, at *32, this Court fully expected the government to have filed one of the two specified supplemental briefs. This is because the Court believed that were the government not to file a supplemental brief, the government likely would have had to withdraw its appeal in *Boaz* — a result the Court viewed as unlikely. Thus, this Court was surprised when August 10, 2020 came and went, and the government did not file a supplemental brief in this case.

Believing that the government thus must have changed its position regarding *Boaz*, the Court then checked the Federal Circuit's docket in *that case*. To the Court's surprise, however, the appeal remained pending; no related cases had been identified, no Rule 28(j) letter appeared to have been submitted, and, in turn, this Court's confusion regarding the government's various positions was compounded.[9]

In particular, the government previously had argued that the undersigned should not follow Judge Kaplan's decision in *Boaz* because it would be reversed on appeal. Def. Mot. at 24 (contending that "*Boaz* misapplied the Federal Circuit's holding in *San Juan* [*City College v. Unites States*, 391 F.3d 1357 (Fed. Cir. 2004] . . . [and] improperly disregarded the Federal Circuit's decisions [in] *Lummi* [*Tribe of the Lummi Reservation, Washington v. United States*, 870 F.3d 1313 (Fed. Cir. 2017)] and [*Nat'l Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196 (Fed. Cir. 1997)] on at least two erroneous grounds.").[10] In light of the government's seeming admission that this Court *does*

---

ancient maxim 'silence gives consent' permits the inference that a party who is silent intends to consent or assent, when no other explanation is consistent with silence."). The referenced "ancient maxim" that "silence is tantamount to an admission" is at least as old as the Talmud, which dates back to approximately 500 C.E. *See* Babylonian Talmud, *Bava Metzia* 37b.

[9] Notably, although the government's opening brief in the *Boaz* appeal contained a notice of related cases, Brief of the United States, ECF No. 14 at 2, *Boaz v. United States*, No. 19-2325 (Fed. Cir. Jan. 31, 2020), the government's final corrected brief contains no such notice. *See generally* Corrected Brief of the United States, ECF No. 35, *Boaz v. United States*, No. 19-2325 (Fed. Cir. Jul. 21, 2020). It is entirely unclear whether the government has informed the Federal Circuit of the government's confession of error brief in the Seventh Circuit or the government's prior position in the district court cases involving ACCs that this Court cataloged in its decision denying the government's motion to dismiss in this case. *Hous. Auth. of Slidell*, 2020 WL 4593229, at *24 n.52.

[10] In the government's motion to dismiss briefs, at oral argument, and then again during the August 19, 2020 status conference discussed in further detail below, the government repeatedly has relied upon the Federal Circuit's decision in *Lummi* in support of its position that this Court lacks jurisdiction over ACC breach claims, like the one HACS asserts here. *See* Jun. 24, 2020 Tr. 43:16–19; Aug. 19, 2020 Tr. 9:16–19. During oral argument, however, the Court directed the government to *subsequent* history in *Lummi* which demonstrates that the government's reliance upon the case is erroneous. Jun. 24, 2020 Tr. 89:20–91:6 (discussing *Lummi Tribe of the Lummi*

possess jurisdiction, however, this Court hypothesized that perhaps the government now believed that *Boaz* and this case were themselves distinguishable such that jurisdiction in fact was proper in this case, but not in *Boaz*.  Because the government's position and its peripatetic and situational views regarding this Court's jurisdiction required some further explanation, and in light of the still-pending *Boaz* appeal, the Court ordered a status conference to determine whether the government indeed held a uniform position regarding ACC breach claims that could account for the government's various positions.  ECF No. 33.

### III.

On August 19, 2020, the Court held a telephonic status conference to address these issues.  The Court began the status conference by asking counsel for the government whether — by not having filed a supplemental brief — the government essentially had confessed error regarding its jurisdictional position in *this* case:

> THE COURT: . . . I was very surprised that August 10th came and went and no brief was filed about *Greenleaf*, where I gave the Government an additional chance to explain itself in terms of its position in oral argument and how I read, I think pretty clearly, the filings in that case. So . . . my first question for you is . . . -- am I correct to assume, then, that the Government is acquiescing in my final paragraph of that [July 27, 2020] order?

---

*Reservation, Washington v. United States*, 788 F. App'x 717, 721 (Fed. Cir. 2019) (holding that "Lummi's breach of contract, breach of fiduciary duty, and breach of trust claims were therefore not with within the scope of our prior mandate" and that the "prior mandate resolved only the question of the Claims Court's jurisdiction of Lummi's NAHASDA and illegal exaction claims")).  The Court's decision denying the government's motion to dismiss in this case emphasized this point.  *Hous. Auth. of Slidell*, 2020 WL 4593229, at *24.  Yet, prior to oral argument the government never identified for the Court the subsequent relevant precedent in *Lummi*.  Indeed, despite the Court's having brought this to the government's attention, *twice* now, the government continues to rely upon *Lummi*.  Aug. 19, 2020 Tr. 9:16–19.  The Court reserves judgment as to whether the government's failure to identify adverse precedent itself constitutes a breach of the duty of candor.  *See, e.g.*, *Jorgenson v. Cnty. of Volusia*, 846 F.2d 1350, 1351–52 (11th Cir. 1988) (affirming the trial court's imposition of sanctions against counsel for failing to identify relevant adverse precedent); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986) ("A lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless[.]"); *see also Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1356 (Fed. Cir. 2003) (discussing the application of Rule 11 to attorney-case-citation issues).

> [GOVERNMENT'S COUNSEL]: Your Honor, we do not believe that the position that we have taken in this case and that the Government took in *Greenleaf* are inconsistent. We do recognize that the Court has – frankly, the Court addressed – considered and rejected the arguments that we would have presented in any such filing. And as Your Honor indicated, *we didn't want to waste the Court's or the parties' time given that those arguments had already been addressed*. We understand that the motion had been – we believe the – our understanding was that the motion had been denied. And to the extent that any, I guess, reconsideration was offered, *we didn't believe that it would meaningfully advance the case*. And we are prepared to move forward with the case. I just – as a secondary note, we also considered very seriously Your Honor's caution that any filing be reviewed or cleared by the Solicitor General, and *we didn't believe that it was warranted to seek that office's input*.

Aug. 19, 2020, Tr. 5:18–6:20 (emphasis added).

None of those rationales presented during the status conference justify the government's failing to adhere to the Court's July 27, 2020 Order, which, under the circumstances as the Court now understands them, *required* a specified supplemental brief. To be clear: while the Court unquestionably provided the government with the flexibility not to file a supplemental brief, the government's failure to do so constituted a representation to the Court that was false and thus violated the duty of candor to which the Justice Department (and all counsel) are expected to adhere. The government could have asked for clarification of the Court's July 27, 2020 Order. The government could have asked for relief from the Court's July 27, 2020 Order. The government could have asked for an extension of time to consult with the OSG or simply to prepare whichever of the two supplemental briefs the government elected to file. The government did none of those things, but instead entirely disregarded the Court's July 27, 2020 Order. How does the Court know this? The government admitted as much during the status conference, and, when pressed, rejected the very representation that the Court *ordered* would be attributed to the government upon its electing *not* to file either specified supplemental brief. Indeed, the government admitted that its *true* view is that which should have been explained in the second alternative supplemental brief described in the Court's July 27, 2020 Order:[11]

> [GOVERNMENT'S COUNSEL]: [T]o the extent that one of those two buckets of briefing is applicable, it -- it would most closely be the second.

---

[11] *Hous. Auth. of Slidell*, 2020 WL 4593229, at *32.

- 10 -

> THE COURT: I think so.
>
> [GOVERNMENT'S COUNSEL]: I think . . . our position is that they are distinguishable. It is, as I mentioned, a position that I believe the Court has already rejected. . . . And I -- just to clarify, I think part of the reason we -- well, the ACC provisions are not where we are finding the distinction. *The distinction is coming from the complaints filed in the separate cases*.

Aug. 19, 2020, Tr. 13:10–14:24 (emphasis added).

The government entirely missed the point of this Court's July 27, 2020 Order. The fact that this Court had reached a conclusion based on the parties' briefs and their oral argument does not preclude or otherwise constrain this Court from ordering supplemental briefing to further aid the Court. For example, the Court may order further briefing for a variety of reasons, including (1) to confirm that it has reached the correct conclusion, (2) to further clarify the parties' positions for the purposes of future proceedings, (3) to permit the Court, *sua sponte*, to reconsider its position, (4) to rectify a counsel's (possible) violation of the duty of candor, or (5) to attempt to avoid the type of improper position shifting that the doctrine of judicial estoppel is designed to prevent. Moreover, the fact that counsel for the government during the status conference attempted to distinguish the government's varying positions based upon the nature of "the complaints filed in the separate cases[,]" Aug. 19, 2020 Tr. 14:23–24, highlights precisely why the Court ordered that a supplemental brief espousing *that* position had to "compare the various ACC provisions and claims" and "include as attachments both the complaint against HUD in *Greenleaf*, as well as the operative ACC(s) in that case." *Hous. Auth. of Slidell*, 2020 WL 4593229, at *32.

Simply put, the government's explanation for violating this Court's July 27, 2020 Order does not add up. The July 27, 2020 Order did *not* provide that the government could decline to file any supplemental brief, while still avoiding the specified admission of error regarding jurisdiction. The fact that the government did not wish to seek reconsideration is immaterial, and any assumption that this Court *could not* undertake such reconsideration *sua sponte* would be patently incorrect. *See* Rules of the United States Court of Federal Claims ("RCFC") 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

After further considering the government's explanations during the status conference, the Court holds that nothing in the Court's July 27, 2020 Order permitted the government to both (1) decline to file a supplemental brief (based on the government's unilateral determination that nothing would be accomplished), and (2) simultaneously avoid an admission that the Court properly denied the government's

motion based upon the government's position before the Seventh Circuit (and the district courts).  Put yet differently, the government improperly elected a fourth option for which the Court's July 27, 2020 Order did not provide:  to decline to file a supplemental brief, while taking an undisclosed, stealth position contrary to the Court's Order.[12]  The election of that non-existent option violated the Court's July 27, 2020 Order and the duty of candor.

IV.

This Court once again readily acknowledges that judicial estoppel cannot create jurisdiction where none exists.  *Hous. Auth. of Slidell*, 2020 WL 4593229, at *25 n.53; *see Dunklebarger v. Merit Sys. Prot. Bd.*, 130 F.3d 1476, 1480 (Fed. Cir. 1997) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), for the proposition that "the principles of estoppel do not apply to vest subject-matter jurisdiction where Congress has not done so[]").  But, that does not mean that courts lack the inherent authority (or pursuant to the Court's Rules) to devise and impose sanctions to preclude parties from engaging in gamesmanship.[13]  *Republic of Ecuador v. Connor*, 708 F.3d 651, 657 (5th Cir. 2013) ("From the standpoint of equity, as most federal courts recognize, a change of legal position can be just as abusive of court processes and an opposing party as deliberate factual flip-flopping.").  As this Court noted in denying the government's motion to dismiss, "'[i]n order to promote consistent candor in litigation, judicial estoppel permits courts to sanction parties who adopt irreconcilably inconsistent positions in litigation[.]'"  *Hous. Auth. of Slidell*, 2020 WL 4593229, at *25 n.54 (quoting *Jackson v. WellSpan Health*, 2014 WL 414251, at *1 (M.D. Pa. Feb. 4, 2014)).

In other words, "[t]he purpose of the [judicial estoppel] doctrine is to protect the integrity of the judiciary by preventing a party from convincing two different courts of contradictory positions, which would mean that one of those two courts was deceived."  *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575–76 (6th Cir. 2020) (noting, however, that "judicial estoppel is construed even more narrowly when requested against the government"); *see Republic of Ecuador*, 708 F.3d at 654 ("Judicial estoppel is an equitable doctrine designed to protect the integrity of judicial proceedings by preventing litigants from asserting contradictory positions for tactical gain."); *Shaffer Equip. Co.*, 11 F.3d at 458–59 ("The general duty of candor and truth thus takes its shape from the larger object of preserving the integrity of the judicial system.").

---

[12] Perhaps the government reasoned that because it could not be estopped at a later date regarding jurisdiction (*i.e.*, particularly should the government succeed in the *Boaz* appeal), it also could not be sanctioned for inconsistent positions.  Such a conclusion appears incorrect.

[13] "Such cynical gamesmanship and deliberate obfuscation wastes the Court's time, virtually ensures duplicative proceedings will be necessary, is inconsistent with Counsel's duty of candor, and constitutes bad faith."  *Dillon v. BMO Harris Bank, N.A.*, 2016 WL 5679190, at *19 (M.D.N.C. Sept. 30, 2016).

The government's error here was not merely "being wrong in choice of theory or miscalculation of facts necessary to sustain the theory[.]"  *1-10 Indus. Assocs., LLC v. United States*, 528 F.3d 859, 870 (Fed. Cir. 2008) (analyzing a putative breach of the duty of candor under RCFC 11, and citing *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir. 1988) for the proposition that a "distinction . . . must be drawn between a position which is merely losing and one which is both losing and sanctionable").  In *1-10 Indus. Assocs.*, the Federal Circuit held that the "Court of Federal Claims erred when it read into [the government's counsel's] response an assertion" that the court already knew not to be true.  528 F.3d at 870.  Thus, the court "could not have been misled as to the truth, especially since [the government's counsel] . . . made no affirmative representation[.]"  *Id.*  Here, the problem is that in declining to file a supplemental brief, the government not only failed to clarify its erroneous explanation of *Greenleaf* provided to the Court at oral argument, but also failed to disclose to the Court the government's true view regarding this Court's jurisdiction over ACC breach cases.  In contrast to the facts at issue in *1-10 Indus. Assocs.*, the government in this case in effect affirmatively represented to this Court a view of jurisdiction to which the government does not, in fact, subscribe.  Furthermore, unlike in *1-10 Indus. Assocs.*, the Court had no way of knowing the truth.  There was, and still is, no way for this Court to know how the government's view of HACS's claims fits with the position the government took before the Seventh Circuit, whether the different positions are reconcilable, or how either position fits with the government's position in the *Boaz* appeal.[14]

The government's disregard of the Court's Order is not innocuous.  A fulsome explanation of the government's various positions — one this Court has now twice ordered the government to provide — might persuade the Court that it does not have jurisdiction over this case, or might persuade HACS to voluntarily dismiss its case, to seek a transfer to district court, or to request a stay pending the resolution of *Boaz*.[15]  On the flip side, had the government followed this Court's instructions to provide a more robust explanation of the government's various positions, the government would have

---

[14] The government's hypothesizing of a distinction between Section 8 and Section 9 funds, when all of the cases at issue involve ACC breach claims, does not even begin to answer the mail. Aug. 19, 2020 Tr. 16:5–10.  For the Court to entertain the alleged distinction between claims involving Section 8 funds and those concerning Section 9 funds, we will require an *actual* explanation of the government's thesis.  The government cannot toss out such a bald assertion, without further explanation, and then use that as a basis to avoid the inconsistencies.  The government has raised the point, and now the government must explain itself in writing.  The same holds true for the government's continued reliance on *Lummi*.

[15] Indeed, HACS's counsel was as confused as the Court regarding the government's position on jurisdiction due to the government's failure to file a supplemental brief.  *See* Aug. 19, 2020 Tr. 16:19–17:5 ("[PLAINTIFF'S COUNSEL]:  We would just say that it was clear to us that we were operating as if that deadline had passed and there was an acquiescence on that issue.").

had an opportunity for further deliberation, and may have concluded that its current position is erroneous. It is for these precise reasons that this Court ordered both that counsel be prepared to discuss these issues "***in detail***" during oral argument, ECF No. 27 at 1 (emphasis added), and to brief the issues further depending on whether or not the government was willing to concede the error of its jurisdictional arguments, just as it had done before the Seventh Circuit. Nevertheless, in contravention of those orders, the government still has not provided a fulsome articulation of how its various positions may be reconciled, let alone a clear explanation of what its position even is.

All of the aforementioned goals of both the pre-oral argument Order, *see* ECF No. 27, as well as the supplemental briefing Order, *Hous. Auth. of Slidell*, 2020 WL 4593229, at *32, are well within the Court's power to pursue. Still, the government apparently thinks that its ability to avoid estoppel means that it can disregard this Court's orders or that the duty of candor somehow does not apply to jurisdictional legal issues. That is not the case. *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018) (explaining that defendant and its "counsel owed a duty of candor to the district court[;] . . . they told that court that diversity jurisdiction did not exist; and they secured a dismissal of the pending federal suit, partially as a result of that disclaimer. When a party makes a representation to a court, there is no unfairness in insisting that he live with its consequences."); *Ward v. Marathon Ashland Petroleum LLC*, 2006 WL 1984711, at *1 (N.D. W.Va. July 13, 2006) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) for the proposition that "that an attorney's duty of candor imposed by Rule 11 . . . should prevent the plaintiff's attorneys from using deceptive practices to avoid federal court jurisdiction").

Courts consistently have held that "counsel for the government, no less than their colleagues in the private sector, are bound by the same obligations to the court. There is, indeed, much to suggest that government counsel have a *higher* duty to uphold because their client is not only the agency they represent but also the public at large." *Gray Panthers v. Schweiker*, 716 F.2d 23, 33 (D.C. Cir. 1983) (emphasis added); *In re Witness Before Special Grand Jury 2000–2*, 288 F.3d 289, 293 (7th Cir. 2002) ("[G]overnment lawyers have responsibilities and obligations different from those facing members of the private bar. While the latter are appropriately concerned first and foremost with protecting their clients—even those engaged in wrongdoing—from criminal charges and public exposure, government lawyers have a higher, competing duty to act in the public interest.").

V.

The Court has the power — and, more importantly, the duty — to have the parties answer its questions. *Cf. Kennedy v. Lockyer*, 379 F.3d 1041, 1058–59 (9th Cir. 2004) (Fisher, J., concurring) (discussing a court's ability to ask questions so as to clarify the parties' respective positions); *see also Jones v. Page*, 76 F.3d 831, 850 (7th Cir. 1996) (noting that a judge "has an obligation to raise legal issues that the parties have

overlooked or neglected"). The Court certainly has the discretion to seek answers to its questions via oral argument or, subsequently, in a supplemental brief. *See, e.g., Austin v. United States*, 128 Fed. Cl. 314, 321 (2016) (providing parties the opportunity to file supplemental briefs in order to clarify unresolved questions). That is particularly true where the Court's questions arise from the erroneous or misleading answers of one of the parties. *Cf. United States v. Musick*, 291 F. App'x 706, 728 n.5 (6th Cir. 2008) (suggesting that a Federal court should ask for supplemental briefing if an "omission was [] material and [thus] prevent[s] [the court] from understanding or fully considering appellant's argument").

For now, the Court reserves judgment on whether the government should be sanctioned in some manner, but rather **ORDERS** as follows:

1. The government shall file a supplemental brief explaining how the *Greenleaf* ACC provisions and the claims that were at issue in that case are distinguishable — for *jurisdictional* purposes — from those at issue here. The government shall specifically compare the language of the various ACC provisions and claims in the two cases.

2. Such supplemental brief shall include as attachments both the complaint against HUD in *Greenleaf*, as well as the operative ACC(s) in that case.

3. The government shall further compare in detail the claims and contract provisions at issue in this case and in *Greenleaf* with those at issue in *Boaz*.

4. The government also shall address the impact in this case of the Federal Circuit's second decision in *Lummi Tribe of the Lummi Reservation, Washington v. United States*, 788 F. App'x 717 (Fed. Cir. 2019), and explain why the government did not address, or even cite, that decision in its motion to dismiss briefing.

5. The supplemental brief must be cleared with, and signed by, an authorized representative of the OSG.

6. Excluding the aforementioned attachments, the government's supplemental brief shall be no more than 25 pages, double-spaced, 12 pt., Times New Roman font.

7. The government's supplemental brief shall be filed on or before **5:00 p.m. on Monday, September 24, 2020**.

8. HACS shall not file a response unless ordered to do so by the Court.

**IT IS SO ORDERED**.

s/Matthew H. Solomson  
Matthew H. Solomson  
Judge